# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**STACEY BAGAMERY o/b/o L.J.B.,**

          **Plaintiff,**

**-vs-**                                                  **Case No.  6:13-cv-615-Orl-41DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

          **Defendant.**

_____

# MEMORANDUM OPINION & ORDER

On behalf of L.J.B., Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying the claim for Supplemental Security Income (SSI) under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## I.      BACKGROUND

### A.    Procedural History

On November 4, 2009, an application for childhood Supplemental Security Income (SSI) was protectively filed for the minor child, L.J.B. (the "Child") by her mother (Plaintiff), alleging that the

Child was disabled due to speech and language delay and autism/pervasive development disorder, specifically Asperger Syndrome.  R. 53, 54, 108.  Plaintiff's claim was denied initially and upon reconsideration.  R. 53-62.  Plaintiff timely requested a hearing before Administrative Law Judge, Robert Droker (hereinafter referred to as "ALJ") which was held on November 17, 2011. R. 29-52. In a decision issued January 3, 2012, the ALJ found the Child not disabled as defined under the Act for the period from November 2009 to January 2012[1].  R. 6-26.  Plaintiff filed a Request for Review of Hearing Decision/Order, which the Appeals Council denied on February 22, 2013.  R. 1-3. Plaintiff filed this action for judicial review on April 15, 2013.  Doc. 1.

### B.    Medical History and Findings Summary

The Child's medical history is set forth in detail in the ALJ's decision.  The Child was born on July 2, 2004.  R. 87, 172.  By way of summary, the Child was treated for Asperger Syndrome, and given speech therapy and occupational therapy.  R. 219.  Plaintiff described the Child at preschool age as having problems focusing, poor eye contact, high pitched loud voice when speaking, singing constantly, unusual gestures/movements, such as shaking hands when not able to find a word, and delays processing information and responding, as well as inflexible thinking, zoning out, poor fine motor skills, difficulty gripping a writing instrument, resisting physical contact, skin rashes, inability in dealing with change and emotional melt downs. R.108.

After reviewing the Child's medical records and the testimony of the Child and her mother (Plaintiff), the ALJ found that the Child was a preschooler on November 4, 2009, the date the application was filed, and was a school-age child at the time of the decision who  had not engaged in substantial gainful activity since November 4, 2009.  R. 12.  The ALJ determined that the Child

---

[1]Plaintiff contends the Child was disabled since October 1, 2008; however, the relevant period for deciding the SSI claim is the month in which she filed her SSI application November 2009 through the date of the ALJ's decision January 2012. *See* Doc. 17 at 3 (with citations to authority).

suffered from Asperger syndrome, a "severe" medically determinable impairment, but did not have an impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 12.  The ALJ found that the evidence established the following functional limitations from the Child's impairments and reasonably related symptoms:  less than marked limitation in the domain of acquiring and using information; less than marked limitation of functioning in the domain of attending and completing tasks; less than marked limitation in the domain of interacting and relating with others; no limitations in the domain of moving about and manipulating objects; no limitation in the domain of caring for himself; and less than marked limitation in the domain of health and physical well-being. R. 16-22.  Based on these limitations, the ALJ found that the Child's impairments did not functionally equal any listed impairment.  R. 12. Accordingly, the ALJ determined that the Child had not been disabled since November 4, 2009. R. 22.

Plaintiff now asserts three basic errors.  First, Plaintiff contends that the ALJ erred in failing to state what weight he gave to the opinions of the Child's teachers.  Second, Plaintiff argues the ALJ erred by not applying the correct legal standards to the opinion of the Child's treating physician and, instead, in giving significant weight to the opinions of the state consultants.  Third, Plaintiff contends the ALJ erred by not applying the correct legal standards when he determined the Child's functioning in the six domains.  For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## II.      STANDARD OF DISABILITY AND STANDARD OF REVIEW

In order for an individual under the age of eighteen to be entitled to Supplemental Security Income payments, the Child must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R.

§ 416.906. The rules[2] follow the three-step sequential evaluation, under which SSA will consider:

(1) whether the child is working; (2) whether the child has a medically determinable "severe"

impairment or combination of impairments; and (3) whether the child's impairment or combination

of impairments meets, medically equals, or functionally equals the severity of an impairment in the

listings. 20 C.F.R. § 416.924. Whether a child meets the "listing-level severity" standard is

dependent upon whether the child has marked limitations in two broad areas of development or

functioning or extreme limitation in one of those areas. 20 C.F.R. § 416.926a. Under the regulations

for children, there are six domains used to determine a child's functional equivalence: (1) acquiring

and using information; (2) attending and completing tasks; (3) interacting and relating with others;

(4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-

being. 20 C.F.R. § 416.926a.

Whether a child meets the "listing-level severity" standard is dependent upon whether the

child has "marked" limitations in two broad areas of development or functioning or "extreme"

limitation in one of those areas. 20 C.F.R. § 416.926a(d). In assessing whether the Child has

"marked" or "extreme" limitations, the ALJ must consider the functional limitations from all

medically determinable impairments, including any impairments that are not severe, as well as the

interactive and cumulative effects of the child's impairment or combination of impairments

individually in each domain. 20 C.F.R. § 416.926a(c). A marked limitation "seriously interferes"

with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2).

---

[2]On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("the 1996 Act"), which amended the statutory standard for children seeking SSI benefits based on disability such that a child seeking SSI benefits based on disability will be found disabled if he or she has a medically determinable impairment "which results in marked and severe functional limitations," and which meets the statutory duration requirement. *Brawdy v. Barnhart*, No. Civ. A. SA01-CA-0835F, 2003 WL 1955839, at *3-4 (W.D. Tex. Mar. 27, 2003) (internal citations omitted). The final rules became effective on January 2, 2001. *Id.*

An "extreme" limitation is one that interferes very seriously with a child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982) (internal quotations omitted).

The court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the SSA's decision. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Even if the court finds that the evidence weighs against the SSA's decision, the court must affirm if the decision is supported by substantial evidence. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981); *see also Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984). The court may not reweigh the evidence or substitute its own judgment, even if the court finds that the weight of the evidence is against the SSA's decision. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusions. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Walker*, 826 F.2d at 999.

## III. ANALYSIS

### A. Opinion evidence

Plaintiff argues that the opinions from the Child's teachers and a treating physician support disability, but the ALJ did not apply the correct standards to this opinion evidence, and instead relied on the opinion of the reviewing physician to find Plaintiff not disabled. The Commissioner argues

that substantial evidence supports the ALJ's finding that Plaintiff was not entitled to SSI and the ALJ properly weighed all of the opinion evidence.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callaghan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Plaintiff contends that the ALJ did not apply the correct legal standards to the opinion of Dr. Rossignol of Creations Own Encounter, Inc. who had treated the Child from 2009 to 2012. R. 427. On November 15, 2011, Dr. Rossignol opined that the Child had marked limitations in social interaction, communication, activities, interests, inattention, making friends, maintaining friendships,

gross motor movement, repetitive behaviors, and maintaining concentration persistence or pace; and he submitted an additional letter explaining his opinion.  R. 424, 427.  He indicated that the Child required medication and nutritional supplements and benefitted from a special diet. R. 15, 427. Plaintiff contends that the ALJ's failure to credit Dr. Rossignol's opinion requires remand because the "marked" limitations in several domains of functioning that he opined would require a finding of disability under the applicable regulations. *See* 20 C.F.R. § 416.926a(d).

Plaintiff also argues that the ALJ erred in failing to cite a single piece of evidence in rejecting Dr. Rossignol's opinion (R. 15) and in omitting other evidence that supported Dr. Rossignol's opinion, including the opinion of the Child's kindergarten teacher[3], Ms. Richmond, who opined in November 2011 that the Child had "serious" and "very serious" problems in acquiring and using information, attending and completing tasks, and interacting and relating with others; and "serious" problems in caring for herself.  R. 163-70.

The ALJ gave several reasons for rejecting Dr. Rossignol's and the kindergarten teacher's opinions:

> A very important function of an [ALJ] in disability cases is the assessment of the relative probative weight to be given to conflicting medical opinions regarding the claimant.  In this case, no great weight is given to Dr. Rossignol's extreme limitations as they apparently were issued for the purpose of generating evidence for this appeal and are not consistent with the doctor's own treatment notes or with the medical record on the whole. Furthermore, such extreme limitations are not supported by the claimant's actual level of functioning.  The remaining treating source opinions are given great weight as they are well supported by the record evidence.
>
> The opinions of the consultative examiners deserve significant weight as these sources actually examined the claimant and issued unbiased opinions that are consistent and supported by the record evidence.  The State agency opinions are generally consistent with the record and are given significant weight as these sources reviewed medical records and issued unbiased opinions that are generally supported by the record in its

---

[3]Plaintiff also cites the report of the Child's pre-kindergarten (K-4 - four year olds) teacher, Ms. Hoffman, who for the most part at the end of the year noted with smiley faces that Plaintiff was "progressing well" in 33 Pre-K developmental areas and "developing the skill" in another 8 skill areas out of total of 41 development areas. R. 352. This school report, which also says the Child is "a bright little girl" and is "progressing well" does not support Dr. Rossignol's opinion.  R. 351.

entirety.  Limited weight is given to the teacher opinions as these sources are not acceptable medical sources and such extreme opinions are not supported by the medical evidence or by the fact that the claimant is in a regular classroom setting and requires no additional school services.

R. 15.

Plaintiff argues that a claimant generally has the right and responsibility to submit evidence to support her claim and the ALJ should not be able to reject evidence merely on the basis that it was obtained for consideration by the ALJ. She argues that there is no evidence to support a finding that Dr. Rossignol was not being honest, and it is not reasonable to assume that a respectable licensed physician in the State of Florida would risk his license and freedom by lying to a United States agency just because his patient has appealed the denial of her claim for disability benefits. Doctors are frequently asked to give opinions for disability cases, including the State consultants relied on by the ALJ.  Doc. 13, 13-1 (citing *Mulholland v. Astrue*, Case No. 1:06-CV-2913-AJB, 2008 WL 687326 (N.D. Ga. Mar. 11, 2008) (holding that the fact that the claimant went to this psychologist at the request of the claimant's attorney does not by itself impugn this opinion) and *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) (stating that "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it.").  Plaintiff argues that the ALJ has failed to articulate adequate reasons for giving less weight to the opinion of the Child's treating physician, by merely stating that there is some "inconsistency" somewhere in the record, and without more explanation, is not a clear articulation of reasons, particularly when substantial evidence actually supported his opinion of significant limitations in functioning.

The Commissioner argues that the ALJ discussed and specifically relied upon specific medical evidence that the Child had received treatment and medications that assisted her in alleviating the alleged symptoms of her impairments.  Doc. 17. The Commissioner contends that, after considering

this evidence of record, the ALJ properly relied on substantial evidence in rejecting the opinions of the Child's physician, Dr. Rossignol, and her teachers. The Commissioner points out that the factors for evaluating medical opinions delineated in 20 C.F.R. § 416.927(d), also apply to opinions from other sources, such as a claimant's teachers. See Social Security Ruling (SSR) 06-03p, 71 Fed. Reg. 45,593 (2006). Those factors include the length of time the source has known the claimant, the consistency of the source's opinion with the other evidence, and how well the source explains his opinion. See *id.*; 20 C.F.R. § 416.927(d).

The Child was first diagnosed on October 17, 2008, by Salman Ahmed, M.D., with speech delay, possible Asperger, and pervasive developmental disorders. R. 213. On October 20, 2008, Dr. Ahmed diagnosed delayed language and prescribed speech therapy R. 212. On November 5, 2008, Rathinam Ananthi, M.D., noted speech limitations and delayed social development (R. 197, 225), and diagnosed Asperger Syndrome. R. 198. Dr. Ananthi noted some symptoms of obsessive compulsive disorder, being unable to engage peers in conversation, isolating herself, avoiding eye contact, talking in a high voice, and difficulty concentrating R. 225. However, Dr. Ananthi said the Child had only mild social difficulties, she was "very high functioning," and an MRI of the Child's brain and an EEG also returned normal. R. 13, 173-75, 198, 206, 228. The Child's objective language testing showed her results were also within the average range. R. 14, 195. The ALJ specifically relied on the Easter Seals records showing she had received speech therapy for six sessions before being discharged in January 2009. R. 220-21.

The Child received speech therapy from Easter Seals from November 2008 to January 2009 for six sessions. R. 219-24. On November 7, 2008, Susan Tyler, M.S., CCC/SLP, a speech language pathologist, evaluated the Child and performed testing which showed the Child's scores fell within the average range, however, she did have some difficulty participating in a conversation (asking, answering questions and maintaining a topic). R. 209-10. On January 6, 2009, Dr. Ananthi and a

therapist opined, "Based on clinical observation, interpretive report of sensory questionnaire, [and] results from PDMS-2 test [the Child] would benefit from OT therapy [occupational therapy]" R. 199.

On January 29, 2009, Marsha E. Palitz, M.Ed., CCC/SLP, who is a speech and language diagnostician, evaluated the Child in a psycho-educational evaluation and found " a strong possibility of Asperger"; mild delays or weaknesses in conversational skills but overall language skills in the average range; frustration, limited facial expression, and noted "it is possible that some sensory difficulties are contributing to her social delays." R. 312-16[4]. Ms. Palitz opined that the Child's intelligence was above–average relative to children of comparable age, and she earned average scores in receptive school readiness, processing, visual-motor integration, and adaptive behavior. R. 313, 321-22. The Child's daily living skills revealed adequate adaptive functioning, socialization, communication skills, and motor skills (R. 322). Additional Exceptional Student Education testing through the School District of Volusia County dated February 2009 similarly demonstrated that the Child's language skills fell within the average range. R. 315). Ms. Palitz opined that the Child had adequate skills in her understanding, use of vocabulary, use of concepts, and grammatical structures and her speech production and intelligibility were also commensurate with that of same-age peers. R. 14, 316.

On January 29, 2009, Carolyn Troncoso, M.S., Ed.S., the public school district psychologist (the Child was in private school at the time but presumably would be eligible for public school services) evaluated the Child and recommended convening a staffing committed to determine whether the Child was eligible for exceptional student education services. R. 326. The school psychologist cautioned that "Tests of young children should be interpreted cautiously . . . and should not be predictive of future potential. Pre-school age children do not always respond with their optimal

---

[4]The report is in the record twice with other medical records, hence, although the parties cite different pages, they are citing the same report. *See* R. 276.

performance to externally exposed tasks." R. 326. There are no records to indicate she ever actually received public school special education services.

On February 9, 2009, an exam at Dr. Rossignol's office (Creations Own) diagnosed apraxia[5]. R. 269. On March 25, 2009, Dr. Ananthi recommended "intense" applied behavior analysis therapy even while noting, "Given significant social interaction and very high functioning child." R. 228. He recommended to Plaintiff (her mother) to continue with intense applied behavioral therapy; he encouraged her to increase the Child's social interaction and discharged her from his neurology practice. R. 228.

On May 7, 2010, the Child underwent a speech and language consultative examination with Cynthia Jenkins, M.A., a speech-language pathologist, and results of language testing showed that the Child's language skills were in the normal range for comprehension and expressive ability. R. 355-56. The Child had average performance for receptive language and language content; her Gilliam Autism score indicated a very high autism quotient, which suggested that her impairment was related to Autism. R. 356. Her conversational speech was deemed 90% intelligible for known and 80% for unknown context, suggesting that she had a mild to moderate impairment for speech production. R. 356. There was 90% improvement, however, with repetition, and, overall, Ms. Jenkins opined that the Child had average ability for receptive and expressive language and only a mild articulation delay. R. 356-57.

In May 18, 2010, a state agency psychologist (Dr. Leslie Devitt), in consultation with a physician who is apparently a pediatrician[6] (Dr. Ira Pinnelas), reviewed the medical evidence and indicated that Plaintiff had no limitation in acquiring and using information and less than marked

---

[5]Verbal apraxia is defined as a speech disorder in which phonemic substitutions are constantly used for the desired syllable or word. STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006).

[6]The Commissioner represents that Dr. Pinnelas' specialty code is 32, which is the code for a pediatrician. See Program Operations Manual System DI 26510.090. Doc. 17.

limitations in all other domains.  R. 14, 359-64.  Several months later, on September 8, 2010, Dr. J. Jeff Oatley, a psychologist, examined the Child, finding she demonstrated adequate quality of thinking, the ability to follow conversations without difficulty, no severe memory deficits, but poor social skills; he noted she was easy to understand despite her loud and excited speech.  R. 14, 366. Dr. Oatley diagnosed the Child with pervasive developmental disorder not otherwise specified, rule out Asperger syndrome.  R. 15, 367.

An additional state agency reviewing physician (Dr. Scott Fauth) and a state agency psychologist (Dr. Patricia Boger), both reviewed all of the medical evidence available as of October 2010 and opined that the Child had marked limitations in her ability to interact and relate to others but had no limitation in any other domain.  R. 15, 369-73.

In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, *supra*. The Eleventh Circuit stated that "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178–79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir.1981)).

In this case, the ALJ discussed the opinion of Dr. Rossignol, of Creations Own Encounter, Inc. in a family practice specialty (R. 423), who responded to a check-the-box form from Plaintiff's representative and checked every single box indicating the Child had "marked" limitations in social interaction, communication, activities, interests, inattention, making friends, maintaining friendships,

gross motor movement, repetitive behaviors, and maintaining concentration persistence or pace. R. 424-27. The non-standard Social Security form only allowed for "marked" abnormalities or none at all and did not allow for any level of impairment in between the two levels; the form did not define "marked" or explained the frequency of the presence of the deficits. R. 423-25. Dr. Rossignol also submitted an additional letter explaining the basis for his opinion:

> She has significant limitations in social interaction. For example, she would rather play by herself. She is somewhat egocentric in her thinking. She does not always interact with other children. She also has deficits in her verbal and nonverbal communication. For example, she will sometimes have speech that is high pitched and silly in nature. She has good vocabulary but sometimes does not always express verbally things in an appropriate fashion. She has restricted interests and activities. She always likes to do certain things that she wants and does not always broaden her horizons and do things that most kids would do. She has inattention and has some hyperactivity, can be impulsive. She has difficulty making friends and keeping friends. She also has significant delays in fine motor skills. She has difficulty tying shoes. She also has impairments in gross motor skills. She cannot catch a ball. She cannot do jumping jacks. She has difficulty riding a bike. She also has difficulty with personal functioning. For example, she cannot bathe herself. These impairments are marked deficits and problems. She is currently on certain medications to help some of these behavioral problems. These medications are medically necessary and without them, she would not function well in society. She is also on several nutritional supplements, which have been shown to improve certain problems and behaviors in children with autism and Asperger syndrome. The supplements that she is using are high quality and pure and are necessary in order to help her underlying behavioral problems. . . . She continues to have some difficulty with math skills. Sometimes, she has difficulty getting ideas out of her head. She can still be emotional and cry over things very easily. In summary, she has Asperger syndrome with significant limitations and it is medically necessary that she continue her current supplements, medications, and diet.

R.427.

The ALJ held that Dr. Rossignol's "extreme limitations" were "not consistent with the doctor's own treatment notes or with the medical record on the whole" and were not supported by the Child's actual level of functioning; however, he remaining treating source opinions were given great weight as they were well supported by the record evidence. R. 15.

The ALJ properly included and specifically discussed the other medical evidence in the record from treating or examining specialists who were as well qualified or more qualified as Dr. Rossignol to diagnose and treat the Child for Asperger syndrome. The ALJ recognized that the neurologist Dr. Ananthi diagnosed the Child with "mild social difficulties"; she was functioning in the average language range following six Easter Seals speech therapy sessions; her preschool report card stated she was a "joy to have in class" and she was making good educational progress; the teacher noted the Child enjoyed school and did well. R. 14. The ALJ also cited other objective testing which showed the Child's speech and language skills were within the normal range with a mild articulation delay. R. 14. The consultative examining psychologist, Dr. Oatley, opined the Child could follow a conversation without difficulty, demonstrated no severe memory deficits, but acknowledged she had "poor social skills." R. 14. The ALJ based his decision on substantial evidence in the medical record from objective language and speech delay testing that showed the Child had mild and/or correctable symptoms and, even with "poor social skills" she was making "good educational progress" and was doing well in school.

The ALJ also gave "limited weight" to the teacher opinions, including Ms. Richmond's, as these sources were not acceptable medical sources and such extreme opinions were not supported by the medical evidence or by the fact that the Child was in a regular classroom setting and required no additional school services. R. 16.

The very positive assessment of the pre-kindergarten teacher that the Child was a "joy to have in class" and was "doing well" (from which the ALJ quoted) actually contradicted that of the kindergarten teacher, Ms. Richmond, who listed many "serious" and "very serious" problems in acquiring and using information, attending and completing tasks, and interacting and relating with others; and "serious" problems in caring for herself. R. 163-70. The report card of the Child's pre-kindergarten (K-4- four year olds) teacher, Ms. Hoffman, for the most part (at the end of the year)

noted with smiley faces that Plaintiff was "progressing well" in thirty-three Pre-K developmental areas and "developing the skill" in another eight skill areas out of total of forty-one development areas. R. 352. This school report, which also says the Child is "a bright little girl" and is "progressing well" does not support Dr. Rossignol's opinion. R. 351.

The January 2009 Report of psycho-education testing by Dr. Troncoso, the public school district psychologist, reported that the Child's scores on the cognitive assessment were in the above average range compared to her same age peers; her pre-academic/academic skills were at age and learning ability level; and her adaptive skills were adequate compared to her same age peers. R. 326. In addition, she showed signs of learning ability strengths in short-term visual memory, visual motor integration, short-term auditory memory, short-term recall, and visual discrimination. R. 326. The ALJ's rejection of Ms. Hoffman's opinion was based on substantial evidence.

### B.  The Child's functioning in the six domains

Plaintiff also argues that the ALJ erred in failing to properly consider all of the evidence of the Child's limitations in the functioning in the six domains.  In the case of a child, the claimant should be found disabled if she has a "marked" limitation in two of the six functional domains set forth in the Commissioner's regulations. 20 C.F.R. § 416.926a(d).  A marked limitation is one that "seriously" interferes with activities. 20 C.F.R. § 416.926a(e)(2).

Plaintiff argues that the ALJ failed to consider all of the evidence in determining the Child's functioning and ignored the regulations which require the ALJ to "consider all the relevant information in the case record that helps [SSA] determine your functioning." 20 C.F.R. §416.926a(e); Social Security Ruling (SSR) 09-2p (requiring the ALJ to "always evaluate the 'whole child'" when making a finding regarding functional equivalence and resolve inconsistencies "based on all of the relevant evidence in the case record").  Plaintiff argues the ALJ did not even come close to considering all the evidence when determining the Child's functioning because the ALJ only cited one

piece of evidence when he determined the Child's functioning, *i.e.*, "only mild social difficulties (Exhibit 4F/2)." R. 19.  Plaintiff contends the ALJ erred in failing to mention the teachers' opinions and that of Dr. Rossignol which, Plaintiff argues, supported marked limitations in more than one domain.  Although Plaintiff fails to specify which of the domains she believes the ALJ erred in failing to find marked limitations, Dr. Rossignol opined that the Child had "marked" limitations/abnormalities in: reciprocal social interaction, verbal and nonverbal communication, restricted repertoire of activities and interests, inattention, impulsiveness, and the inability to make friends and maintain friendships; clumsy and uncoordinated gross motor movement; difficulties in maintaining social functioning due to restrictive and repetitive behaviors; and difficulties in maintaining concentration, persistence, or pace.  R. 424.

Plaintiff contends that the ALJ also erred in failing to consider the opinion of Dr. Oatley, the consultative examiner, who opined that the Child had "marked limitations in the ability to interact and relate with others" and diagnosed pervasive developmental disorder "as indicated by poor social skills, delayed language development and continued language peculiarities. Asperger [Syndrome] is ruled out with the history of language delay and persisting language problems." R. 367-70.  Plaintiff also argues that the ALJ did not mention any of the following evidence showing marked limitations: Ms. Palitz found delays or weaknesses in conversational skills, frustration, limited facial expression, and noted "it is possible that some sensory difficulties are contributing to her social delays" (R. 280); diagnoses of speech delay (R. 212-13, 339, 340), pervasive developmental disorders (R. 213), and apraxia (R. 269); Dr. Ananthi's notations of speech limitations and delayed social development (R. 197, 225), and symptoms of obsessive compulsive disorder, being unable to engage peers in conversation, isolating herself, avoiding eye contact, talking in a high voice, and difficulty concentrating (R. 225).  She also points out that Dr. Ananthi recommended "intense" applied behavior analysis therapy (R. 228); Dr. Ahmed prescribed speech therapy (R. 212); and progress reports

showed that the Child needed improvement in language (R. 352, 354).[7]  Plaintiff concedes that the ALJ did mention some of this evidence in other parts of his decision, but argues that he did not mention this evidence specifically when determining the Child's functioning in the six domains, and therefore, Plaintiff argues, it must be assumed he did not consider it properly when determining the Child's functioning.

The Commissioner contends that, after considering all of the evidence of record, the ALJ properly relied on substantial evidence in support of his conclusion that the Child's Asperger Syndrome resulted in less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and in health and physical well-being. R. 17-22.  To the extent that the evidence cited by Plaintiff relates to the domain of acquiring and using information– such as evidence of language or speech delays/limitations and some sensory difficulties – the ALJ properly and specifically cited several portions of the Record: the Child's apparent lack of need of a structured classroom setting, the Child's ability to attend regular classes, her test scores showing she functioned at the average level, the positive statements noted in the Child's report cards, and the fact that she was on task academically.  R. 16-17, 21, 35, 170, 350.

The Commissioner contends that in the domain of attending and completing tasks, the ALJ properly relied on the Child's ability to complete her homework, and all class work assignments without difficulty, which he found was consistent with the state agency physicians' opinions that Plaintiff had less than marked limitations in this domain.  R. 18, 359-64, 367.  The Court has addressed the ALJ's treatment of the evidence from the teachers above, finding it was based on substantial evidence, particularly the assessment from the Child's pre-kindergarten teacher.

---

[7]Plaintiff also contends that Ms. Troncoso "recommended exceptional student education, intervention, and a psychological consultation (R. 326); however, Ms. Troncoso merely recommended convening a staffing committed to determine whether the Child was eligible for exceptional student education services, and there are no records to indicate she ever actually received public school services.

Plaintiff primarily cites to evidence that falls within the domain of interacting and relating with others, such as the Child's ability to relate to others socially--Dr. Oatley's opinion that the Child had "marked limitations in the ability to interact and relate with others . . . as indicated by poor social skills"; "social delays"; symptoms of obsessive compulsive disorder; being unable to engage peers in conversation; isolating herself; avoiding eye contact; talking in a high voice, and Dr. Ananthi's recommendation for "intense" applied behavior analysis. R. 197, 225, 228, 280, 367-70. In finding the Child had less than marked limitations in this domain of interacting and relating with others, the ALJ relied upon Plaintiff's ability to adequately answer questions at the hearing, her teacher's statement that she was polite and obeyed orders, Dr. Ananthi's opinion that she had "mild" social difficulties, and her normal testing results. R. 19, 45-50, 170, 226. The ALJ also gave weight to the effectiveness of Plaintiff's speech therapy sessions and her lack of need for further speech therapy. R. 19, 199, 201.

Plaintiff does not specifically cite any evidence to dispute the ALJ's findings of less than marked limitation in the domain of health and physical well-being and no limitation in the domain of the ability to care for self. R. 21-22. Thus, although the Court need not address these findings, they are based on substantial evidence with citations specifically to the record. In the domain of moving about and manipulating objects, the ALJ properly relied upon Plaintiff's statements that the Child can climb on and off high objects, throw a ball in a specific direction, complete puzzles, cut out shapes using scissors, and unwrap small objects; reached motor developmental milestones at expected intervals and was able to grasp a pencil and write. R. 20, 323, 366. The ALJ found the Child had no limitation in the domain of the ability to care for self based on Plaintiff's testimony that the Child could pretty much dress herself and enjoyed playing with animals and could get herself a snack. R. 21.

Overall, the ALJ's findings in the six domains of functioning were based on substantial evidence.

# CONCLUSION

In this case, the Court does not doubt that the Child has documented difficulties which have caused her family to seek professional guidance in modifying her behavior and guiding her social development.  The issue before the Court, however, is not whether this Court would make the same decision or whether another decision could be warranted from the record, but only whether the decision made by the ALJ was in accordance with proper legal standards and supported by substantial (not necessarily uniform or overwhelming) evidence. The Court finds, under this deferential standard, that the administrative decision presently before the Court is, in fact, supported by substantial evidence and was made in accordance with the proper legal standards.

Accordingly, it is **respectfully RECOMMENDED** that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**DONE** and **ORDERED** in Orlando, Florida on July 2, 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record